Approved: *Thomas John Wright*
          THOMAS JOHN WRIGHT
          Assistant United States Attorney

Before:    THE HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

**20 MAG 9227**

---------------------------------- x
                                    :
UNITED STATES OF AMERICA        :    COMPLAINT
                                    :
     - v. -                         :    Violation of 21 U.S.C.
                                    :    §§ 812, 841, and 846
AHRMAN BURKE,                   :
    a/k/a "Stackin,"            :
    a/k/a "Stacks,"             :    COUNTY OF OFFENSE:
                                  :    NEW YORK
           Defendant.            :
                                  :
---------------------------------- x

SOUTHERN DISTRICT OF NEW YORK, ss:

       JAMES ROMANO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
(Narcotics Conspiracy)

     1.    In or about August 2020, in the Southern District of New York and elsewhere, AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

     2.    It was a part and an object of the conspiracy that AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

     3.    The controlled substance that AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant, conspired to distribute and possess with intent to distribute was mixtures and substances

containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

### COUNT TWO
(Narcotics Distribution)

4. On or about August 10, 2020, in the Southern District of New York, AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant, intentionally and knowingly distributed a controlled substance, in violation of Title 21 United States Code, Section 841(a)(1).

5. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

### COUNT THREE
(Controlled Substances Possession)

6. On or about August 28, 2020, in the Southern District of New York, AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant, intentionally and knowingly possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

7. The controlled substances involved in the offense were (1) mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack," in violation of Title 21, United States Code, Section 841(b)(1)(C), (2) a quantity of mushrooms containing psilocin, in violation of Title 21, United States Code, Section 841(b)(1)(C), (3) less than 50 kilograms of marihuana, in violation of Title 21,United States Code, Section 841(b)(1)(D), and (4) mixtures and substances containing a detectable amount of alprazolam, in violation of Title 21, United States Code, Sections 841(b)(1)(E)(ii).

The bases for my knowledge of the foregoing charge are, in part, as follows:

8. I am a Detective with the Overdose Team of the Detective Bureau for Manhattan South (the "Overdose Team"), and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law-enforcement officers and other individuals. Because this affidavit is being submitted for the

limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Background of Investigation

9. Based on my participation in this investigation and my training, education, and experience, I have learned the following, in substance and in part:

      a. Multiple pharmaceutical companies manufacture brand-name and generic versions of pills containing different mixtures of acetaminophen and oxycodone, a controlled substance, that are prescribed by physicians for pain relief and that depend in their mixture on the strength that the prescribing physician intends to achieve for his or her patient. The manufacturers of such pills typically imprint specific marks on the pills, which indicate to prescribers and users the mixture of acetaminophen and oxycodone. For example, one pharmaceutical company manufactures a generic version of such pills that are in wide distribution and that are imprinted with an "M" on one side of the pill and "30" on the other side of the pill and are a distinct blue in color. Given their euphoric effects, such pills are widely diverted from their prescribed use and distributed by drug trafficking organizations to recreational drug users.

      b. Based on my training and experience, I am familiar with the substitution of fentanyl for oxycodone by drug trafficking organizations that are able to obtain fentanyl at a much cheaper price than pharmaceutical-grade prescription pills containing oxycodone. These drug trafficking organizations manufacture pills containing fentanyl with the intention of imitating prescription pills containing oxycodone, a narcotic drug with much less powerful and less dangerous effects upon its users than fentanyl.

      c. Since in or about August 2020, the NYPD has investigated AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant, for selling pills purporting by their appearance and their price to be pharmaceutically manufactured pills containing oxycodone but that in fact contain fentanyl. As set forth in detail below, on or about August 10, 2020, BURKE sold 30 such pills to an individual (the "Victim") who was found deceased on or about August 11, 2020 from a suspected fatal overdose.

### The Defendant's Distribution of Imitation Pills Containing Fentanyl on or about August 10, 2020

10. Based on my participation in this investigation, including my conversations with other law-enforcement personnel and members of the public, and my review of various types of evidence described in more detail below, I have learned the following, among other things:

    a. On or about August 11, 2020, members of the NYPD responded to an apartment in Chelsea ("Apartment-1"), where the Victim was found deceased earlier that day by the female resident of Apartment-1 ("Female-1"). Together with other members of the Overdose Team, I commenced an investigation into the suspected fatal overdose of the Victim.

    b. Female-1 informed me, in substance and in part, that she had hosted the Victim as an overnight guest from in or about the evening of August 10, 2020 onwards. Inside of Apartment-1, members of the Overdose Team recovered a cellphone (the "Victim Cellphone") which I searched thereafter and which is identifiable as the Victim's cellphone based on multiple factors, including the owner name of the Victim Cellphone (*i.e.*, "[First Name of Victim]'s iPhone") and multiple user accounts that are associated with the Victim Cellphone (*e.g.*, an email address of "[First Name Last Name of Victim]@aol.com" and an Instagram account of "[First Name Last Name of Victim]") that incorporate the Victim's name.

    c. Thereafter, I searched a car (the "Victim's Car") that was parked in the vicinity of Apartment-1 and which I identified through records obtained from the New York State Department of Motor Vehicles as being registered to the Victim. Inside the center console of the Victim's Car, I found, among other things, a clear plastic bag containing 24 pills, which are blue and imprinted on one side of the pill with "M" and on the other side of the pill with "30." As discussed above, these indicia are consistent with the appearance of a pharmaceutically manufactured 30 milligram pill that contains oxycodone, which, based on my training, education, and experience, is commonly diverted from drug trafficking organizations and sold to customers who wish to obtain oxycodone for recreational drug use.

    d. Based on my review of laboratory results, I have learned, among other things, that one of the 24 pills, which are identical, was identified as having the presence of fentanyl, not oxycodone. As discussed above, this is consistent with drug traffickers who manufacture pills that by their appearance purport to be pharmaceutically manufactured pills that contain oxycodone

but that in fact contain only fentanyl, a much cheaper and much deadlier controlled substance.

        e.  Based on my review of the Victim Cellphone, I learned, among other things, that the Victim participated in a series of calls and texts on or about August 10, 2020 with Female-1, during which they discussed, in substance and in part, their plans to meet that evening at Apartment-1 for which Victim was purchasing a quantity of "blues." Based on my training, education, and experience, my recovery and the subsequent laboratory analysis of the 24 pills described in ¶¶ 10.c and d, *supra*, and certain other evidence identified on the Victim Cellphone, which I detail in the following paragraphs, I believe "blues" refers to pharmaceutically manufactured 30 milligram pills containing oxycodone.

        f.  Based on my review of the Victim Cellphone, I have also identified a series of calls and texts on or about August 10, 2020 and the days leading up to that date, between the Victim and a cellphone assigned a telephone number ending in 8420 (the "8420 Number"), the user of which I later identified as AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant.[1]  The 8420 Number is listed in the contacts of Victim Cellphone as belonging to the contact name "Stackin."  In particular, I identified the following series of calls and texts between the Victim Cellphone (on the left) and the 8420 Number (on the right):

  08/03/2020 11:46:56 PM Call

---

[1] Based on my review of subscriber information obtained from the carrier for the 8420 Number, I have identified that the name of the subscriber is listed as "Bobby Jones" but the email address associated with the subscriber is listed as "aburke12@stac.edu." In addition, based on my review of the Victim Cellphone, I have also identified that in addition to "Stackin" there are three other contact names similar to "Stackin" listed in the contacts for the Victim Cellphone, including, "Stacks," "Stacks 2," and "Stacks 3." Based on my review of public records accessible through Accurint, a database that compiles public records, including subscriber information for cellphones, I know that the telephone number associated with the contact name "Stacks" is associated with subscriber information on Accurint that lists the subscriber name of "AHRMAN S BURKE." Finally, on or about August 18, 2020, I was watching live video recordings from surveillance cameras maintained in the building where BURKE resides at the same time as another member of the Overdose Team placed multiple calls and texts to the 8420 Number, and I saw BURKE using a cellphone at the same time as the 8420 Number responded with texts.

```
[Not Answered]
08/07/2020 03:26:29 PM Text
"Yo I'm a need some more whenever you man is good"
                                08/07/2020 03:33:50 PM Text
                                       "My bad just seeing this"
                                08/07/2020 03:34:11 PM Text
       "How many you need & for when? I could hit him rn"
                                08/08/2020 11:16:01 AM Text
                                                      "Yerrr"
                                08/08/2020 11:16:11 AM Text
                                            "You still need?"
8/10/2020 11:51:18 AM Call
[Answered; Duration 1 minute 20 seconds]
08/10/2020 7:34:52 PM Call
[Answered; Duration 43 seconds]
08/10/2020 7:51:23 PM Call
[Answered; Duration 38 seconds]
08/10/2020 7:52:58 PM Text
"How far are u"
                                08/10/2020 7:57:31 PM Text
                                                  "Like 7 mins"
                                08/10/2020 7:57:56 PM Text
         "You got 300 cash on you or you gotta send some?"
08/10/2020 8:03:22 PM Text
"Yeah I got cash"
08/10/2020 8:03:30 PM Text
"U got 30 of them"
08/10/2020 8:05:03 PM Call
[Answered; Duration 8 seconds]
                                08/10/2020 8:06:02 PM Text
                                                       "Yeah"
                                08/10/2020 8:06:05 PM Text
                                                 "Why wassup"
08/10/2020 8:08:07 PM Text
"I'll take them"
08/10/2020 8:08:22 PM Text
"You close ?"
                                08/10/2020 8:08:29 PM Text
                  "You got the whole 900 on you in cash?"
08/10/2020 8:08:33 PM Text
"No"
08/10/2020 8:09:01 PM Text
"Some dawg and zelle cool?"
08/10/2020 8:11:23 PM Text
"Wya?"
                                08/10/2020 8:11:37 PM Text
       "Yeah I'm bouta bring them down. I had to take bags
                                                    upstairs"
```

```
08/10/2020 8:11:47 PM Text
"Bet"
                                    08/10/2020 8:12:19 PM Text
               "You able to meet me in the lobby like before?"
08/10/2020 8:12:27 PM Text
"Yeah"
                                    08/10/2020 8:12:43 PM Text
                                                          "Bet"
08/10/2020 8:15:50 PM Text
"Here"
                                    08/10/2020 8:16:17 PM Text
                                     "Bouta get off the elevator"
                                    08/10/2020 8:19:55 PM Text
       "I forgot you was supposed to send me $5 more because
                  you were short last time. Just temembered"
                                    08/10/2020 8:20:01 PM Text
                                                   "Remembered*"
```

Based on my training, education, and experience, as well as my review of additional evidence discussed herein, I believe that this series of calls and texts reflects an order from the Victim to BURKE for approximately 30 pills that by their appearance purported to be pharmaceutically manufactured 30 milligram pills containing oxycodone but that in fact contained fentanyl ("U got 30 of them" / "Yeah" / "I'll take them"), which the Victim arranged to purchase from BURKE for $900 or $30 per pill, which is a price within the range of the market for such diverted 30 milligram pills in the metropolitan area of New York City ("You got the whole 900 on you in cash?").  I further believe that the Victim arranged to pay BURKE partly in cash and partly through an internet-based payment app, Zelle ("No" / "Some dawg and zelle cool?"), when the Victim and BURKE met in person in the lobby of a building, where they had met previously to conduct at least one or more similar transactions ("You able to meet me in the lobby like before?" / "Yeah").  Finally, I also believe that BURKE indicated to the Victim prior to August 10, 2020 that he would acquire these pills from another individual pursuant to any order from the Victim ("How many you need & for when? I could hit him rn").

   g. As part of this investigation, other members of the Overdose Team and I initiated a further series of texts between the Victim Cellphone and BURKE on the 8420 Number, in which we imitated the Victim, who unbeknownst to BURKE, was now deceased. For example, on or about August 11, 2020, we initiated the following series of texts between the Victim Cellphone (on the left) and BURKE (on the right), in which BURKE confirmed that he had sold 30 pills to the Victim the prior night:

7

```
08/11/2020 4:53:30 PM Text
"Yo how many did you give me last night"
                        08/11/2020 4:53:49 PM Text
                                         "30 why"
08/11/2020 4:54:04 PM Text
"I think this bitch stole 1"
                         8/11/2020 4:54:27 PM Text
  "Lol that's what I was telling you last time that she
                                        prob did"
8/11/2020 4:55:13 PM Text
"I'm talk with her"
                         8/11/2020 4:55:37 PM Text
                                        "No doubt"
```

      h.    Based on my review of the Victim Cellphone, I have also identified that the Victim had recently searched in the Apple Maps app on the Victim Cellphone for "209 west 118th street, New York, NY," which, as described below, is the address of the building in which BURKE lives.

      i.    Based on my review of video recordings from surveillance cameras maintained at the building located at 209 West 118th Street, New York, NY 10026 ("Building-1"), I have learned the following, among other things:

          i.    On or about August 10, 2020, the surveillance cameras at Building-1 captured a meeting between the Victim and BURKE, who I identified by comparing the person in the video recordings to a known photograph of BURKE from the New York State Department of Motor Vehicles. In the video recodings, BURKE exited a particular apartment (the "Subject Premises") inside Buidling-1 in order to meet with the Victim.

          ii.    In the video recordings, the Victim and BURKE both appear at different times to use their cellphones at the same approximate time that they were texting each other, as detailed in ¶ 10.f, *supra*. For example, at approximately 8:16 PM, when BURKE texts the Victim "Bouta get off the elevator," the video recordings show BURKE walk out of the elevator into the lobby, where additional video recordings show that he meets the Victim at the main entrance to Building-1 and walks back with him through the lobby and down a staircase into the basement.

          iii.    At approximately 8:18 PM at the base of the staircase, the video recordings depict the Victim entering the frame of the surveillance camera holding and looking at a clear plastic bag containing a blue substance, which, at the distance and the clarity recorded by the surveillance camera is consistent

with the appearance of the clear plastic bag containing the 24 pills that I recovered from the Victim's Car. From there, the video recordings show the Victim and BURKE walk back up the staircase from the basement, at which point the video recordings show the Victim walk out of Building-1 and BURKE return to the fifth floor where he walks into the Subject Premises.

<u>The Search of the Subject Premises and Arrest of the Defendant</u>

11. Based on my participation in this investigation and my training, education, and experience, I have learned the following, among other things:

    a.    On or about August 27, 2020, the Honorable Debra Freeman, United States Magistrate Judge for the Southern District of New York, issued a warrant authorizing a search of the Subject Premises (the "Warrant").

    b.    On or about August 28, 2020, at approximately 6:00 AM, I participated in executing the Warrant together with other members of the Overdose Team. Upon entering the Subject Premises, it became apparent that the Subject Premises is not only a one-bedroom apartment but that it also functions as a commercial daycare center for infants, toddlers, and young children.

    c.    Inside the Subject Premises, I found AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant asleep inside the bedroom in a bed together with an adult female and a minor female, whom BURKE identified as his two-year-old daughter.

    d.    During the course of my ensuing search of the Subject Premises, the following items, among other things, were seized:

        i.    On the bed, I found a cellphone, which BURKE identified as his cellphone;

        ii.    In a closet outside of this bedroom, I found (i) a duffel bag inside of which I found three plastic twists containing a white, rock-like substance, and (ii) a clear plastic container inside of which I found an EKOL Major nine-millimeter semiautomatic pistol (the "Pistol"), which is designed to fire ammunition without projectiles but which, based on my training, education, and experience and that of other members of the Overdose Team, I know is readily adaptable to fire ammunition with projectiles. Based on my examination of the Pistol, I know that the barrel of the Pistol has been tampered with in a manner that is consistent with such adaptation;

9

iii. On top of a plastic container in the hallway in between the aforementioned bedroom and closet of the Subject Premises, I found a plastic bag containing a quantity of mushrooms;

iv. In the living room of the Subject Premises, I found a backpack amidst the toys and other equipment of the daycare, which BURKE stated, in substance and in part, was his backpack. Inside the backpack, I found (i) a plastic bag containing a quantity of a green vegetative substance, (ii) an unmarked pill bottle containing approximately 12 white pills, (iii) a digital scale with the residue of a green, vegetative substance, and (iv) a plastic bag containing numerous empty plastic bags of the same size and appearance as the plastic bag in which I found the 24 pills in the Victim's Car; and

v. In another closet of the Subject Premises, I found a box of ammunition containing approximately 26 rounds of .380-caliber ammunition.

e. Based on my training and experience and the appearance of the white, rock-like substance and the plastic twist packaging, I believe that the white, rock-like substances consist of mixtures and substances containing a detectable amount of cocaine base, in a form commonly referred to as "crack."

f. Based on my training and experience and the appearance of the mushrooms and the plastic bag packaging, I believe that the mushrooms contain psilocin.

g. Based on my training and experience and the appearance of the white pills, including the imprints on them, I believe that the white pills contain mixtures and substances containing a detectable amount of alprazolam.

h. Based on my training and experience and the appearance of the green, vegetative substance, and its seizure together with a scale bearing the residue of that vegetative substance, I believe that the green, vegetative substance is less than 50 kilograms of marihuana.

WHEREFORE, I respectfully request that AHRMAN BURKE, a/k/a "Stackin," a/k/a "Stacks," the defendant, be imprisoned or bailed, as the case may be.

          s/James Romano, by the Court, with permission
          JAMES ROMANO
          Detective
          New York City Police Department

Sworn to me through the transmission of this
Complaint by reliable electronic means (Teleconference),
pursuant to Federal Rule of Criminal Procedure 4.1, on
August 28, 2020

_____
THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK